Argued November 18, affirmed December 23, 1974

# STATE OF OREGON, *Appellant, v.* WAYNE E. FITZGERALD (No. 74-2518), *Respondent.*

530 P2d 553

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

The state appeals from an order granting a motion to suppress evidence obtained in a warrantless search of a room occupied by defendant in a private residence under a rental agreement. In his motion to suppress, defendant relied on two grounds: (1) failure of the police to give defendant a written list of the items seized, in violation of ORS 133.623,[1] and (2) failure of

[1] ORS 133.623 provides:

"(1) The provisions of subsections (2), (3) and (4) of this section apply to all cases of seizure, except for a seizure made under a search warrant.

"(2) If an officer makes an arrest in connection with the seizure, he shall, as soon thereafter as is reasonably possible, make a written list of the things seized and furnish a copy of the list to the defendant.

"* * * * *"

the state to show that a warrantless search came within any proper exception to the constitutional prohibition against such searches.

The trial court suppressed the evidence on the statutory ground, making no mention of the constitutional ground. We hold that the statutory violation was not ground for suppression but affirm the suppression on the constitutional ground.

The police, investigating a grocery store robbery, went to the residence in question and spoke with a woman they found there, one Betty Larson. They told her they were looking for the driver of an automobile which they had seen parked in the driveway of the residence. Larson told the police that the owner was not there but when the police asked her if they could enter the house and look around she said yes, and they did so. Entering an upstairs bedroom normally occupied by the defendant, who was not present at the time, the police found marihuana plants, which they seized and which were the subject of the motion to suppress. No list of the items seized was ever given to the defendant. The record does not disclose that the defendant ever demanded such a list or claimed prejudice as a result.

It is clear that under the law as it existed prior to 1973, a statutory violation such as the one at issue here was not ground for automatic suppression. In *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969), the police had failed to give to the magistrate a list of the items seized under a search warrant, as was required by law. The Supreme Court refused to suppress the evidence, saying:

"* * * While the requirement of a prompt return is no doubt a valuable safeguard of the prop-

erty rights of individuals, these rights can be protected without resort to the automatic invocation of the exclusionary rule. The privacy of the individual, which is protected by the Fourth Amendment, has already been invaded by the time the inventory-and-return statute becomes relevant. The exclusion of trustworthy evidence that has lawfully come into the possession of the government would penalize society without serving a constitutional purpose. We conclude that the motion to suppress was properly overruled, and that the evidence when offered upon trial was properly received." 251 Or at 571.

Defendant contends that the rule in *Cortman* was changed by enactment in 1973 of ORS 133.673 (1), which reads:

"Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by the court in advance of trial."

■ We do not read the statute as requiring such a drastic change in the law—automatic suppression of probative evidence of guilt for failure to comply with a statutory, as distinguished from constitutional, requirement. We are reinforced in this conclusion by the fact that ORS 133.673 (1) was taken almost verbatim from § 164, Proposed Oregon Criminal Procedure Code (1972). The Commentary of the Criminal Law Revision Commission states at 104 that "[s]ubsection (1) perpetuates the existing law on where motions to suppress are filed." We find nothing in the statute expressly or impliedly overruling *Cortman*.

Turning now to the constitutional ground, we dispose of this issue without remand because the facts are not in dispute. Pursuant to a local circuit court

rule the facts relevant to the motion to suppress were stated in affidavits submitted to the court by both parties. Neither party questions the validity of the rule or its application in the present case.

Vincent Larson was the lessee of the residence building in question. His two daughters, one of whom was Betty Larson, and the defendant lived with him in the house. The defendant occupied the bedroom in question under a rental agreement. It was his private room, he was its sole occupant, and no one in the house had permission to allow others to enter it. Police in entering the room relied solely on their conversation with Betty Larson, the entire substance of which is set forth above. Since consent searches are a recognized exception to the warrant requirement, *State v. Douglas*, 260 Or 60, 488 P2d 1366 (1971), *cert denied* 406 US 974 (1972), the question is whether Betty Larson's consent to the search of defendant's room was valid.

■ Ordinarily, a consent search is a search consented to by the person affected. *Davis v. United States*, 328 US 582, 66 S Ct 1256, 90 L Ed 1453 (1946); *State v. Taggart*, 7 Or App 479, 491 P2d 1187 (1971). However, some third-party consents are valid.

■ Recent Oregon decisions have tested the validity of a third-party consent to a search by whether the defendant had a reasonable expectation of privacy as to the area searched. This includes consideration of two elements: whether the defendant had a subjective expectation of privacy, and whether this expectation was objectively reasonable. *State v. Middaugh*, 12 Or App 589, 507 P2d 42, Sup Ct *review denied* (1973); *State v. Stanton*, 7 Or App 286, 490 P2d

1274 (1971). *See also, Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). An important factor to consider in determining if the defendant had a reasonable expectation of privacy is whether the place or thing searched was for defendant's exclusive use, or whether one or more parties shared "common dominion" over the area searched. *See, United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974) ; *State v. Middaugh,* supra.

■ It is evident from defendant's statements in the record that he had a subjective expectation of privacy as to his room. The real issue is whether this expectation was reasonable. The record shows that defendant rented the room in question, for which he paid in money or work. He was the room's sole occupant and had never given anyone permission to extend to others the right of entry. Under these facts we hold that defendant's expectation of privacy was objectively reasonable, and that Betty Larson's consent was invalid.[2]

Affirmed.

_____

[2] Since it does not appear from the record that the police had sufficient reason to believe that Ms. Larson could validly consent to a search of defendant's room, we need not consider the issue of whether it is the consentor's actual authority to consent to a search or the searching officer's reasonable belief as to that authority which is controlling. The language and rationale of our cases imply that actual authority is necessary, *see,* State v. Middaugh, 12 Or App 589, 507 P2d 42, Sup Ct *review denied* (1973); State v. Taggart, 7 Or App 479, 491 P2d 1187 (1971), but we have not yet been squarely presented with that issue. Nor has the United States Supreme Court. *See,* United States v. Matlock, 415 US 164, 177, n 14, 94 S Ct 988, 39 L Ed 2d 242 (1974).