Argued April 24, affirmed May 27, reconsideration denied July 2,
petition for review denied August 6, 1975

STATE OF OREGON, *Respondent, v.* ARTHUR
WILLIAM MACK (No. 74-1080), *Appellant.*

535 P2d 766

*John M. Biggs,* Eugene, argued the cause for appellant. With him on the brief were Allen & Biggs, Eugene.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

**FORT, J.**

Defendant was convicted by the court sitting without a jury of possession of marihuana in a quantity greater than an ounce, ORS 167.207. He appeals from the resulting judgment, assigning as error failure of the trial court to grant his separate motions to suppress, first, evidence obtained from a residence and, second, evidence subsequently obtained from a garage, each pursuant to a search warrant.

Essentially, the matter resolves itself into the sufficiency of the affidavit to support the warrant issued to search defendant's residence. It is agreed that defendant was himself arrested at that time and place, and that in the search incident to his arrest there was found information which led the police to the location of a rented garage. Observation through a window of that garage disclosed the information which led to the obtaining of a second search warrant. Substantial quantities of narcotics were found in the search both of his house and the garage.

The state conceded in the trial court that if the warrant for the search of defendant's residence was unlawful, then under the rule of *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), commonly referred to as the "Fruit of the Poisonous Tree" doctrine (Annotation, 43 ALR3d 385 (1972)), the search of the rented garage was also unlawful.

The challenged affidavit stated:

"* * * * *

"I, Sheryl L. Hackett, being first duly sworn on oath, hereby depose and say as follows:

"That I am a commissioned deputy with the Lane County Sheriff's Office and have been so commissioned for approximately one and one-half years. During that period of time, I have been

assigned to the Lane Interagency Narcotics Team and have been working as an investigative officer with that agency.

"That on February 5, 1974 I received information from a citizen that many people were visiting 1968½ Labona, Eugene, Lane County, Oregon, a residence being rented by Arthur William Mack, and that the persons visiting the residence stayed for only short periods of time. The citizen also advised me that Mack has been driving a silver grey El Camino a sport model pickup, Oregon license FAQ 546, and that he had cut out one inside panel of the bed of the pickup and bolted it back in and covered it over with carpeting. The citizen also gave me the license number of another vehicle which Mack drives, Oregon MGB 504, and a check with the Department of Motor Vehicles shows this to be a 1962 Chevrolet van registered to Arthur W. Mack. A check with the landlord reveals that a subject named Arthur Mack rented the house and left a Mrs. Macks name and a Fall City [sic] telephone number as person to be contacted in case of emergency.

"As a member of the Lane Interagency Narcotics Team, having been trained exclusively in the field of narcotics and dangerous drugs, I am familiar with Arthur William Mack and know that he was arrested for possession of marihuana and possession of cocaine on November 30, 1973; that he had made a similar compartment in another vehicle, Oregon license 9J 7102, and had narcotics hidden in that compartment as well as in compartments in a second vehicle, Oregon license H902963, both vehicles being registered to Arthur Mack; and that Arthur Mack also has a Fall City [sic] address.

"Since February 5, 1974 I have been supervising a surveillance on 1968½ Labona. On February 18, 1974 a large truck Ore. license T343027 registered to Gregory Francis Wickes was observed at the residence and has remained at the residence up

to the present time. A check with the Lane County District Attorney's records shows that Gregory Francis Wickes plead guilty on September 27, 1973 to attempted sale of 10 pounds of marihuana.

"At approximately 2:45 hours on February 21, 1974 I set up continued surveillance on 1968½ Labona, Eugene, Lane County, Oregon. I was advised by the above-mentioned citizen that Mack left his residence at approximately 12:15 hours in a silver grey El Camino, Oregon license FAQ 546. At approximately 2:00 p.m. I observed Mack return to his residence in a blue green 1966 Chevrolet, Oregon license FBT 775, and park along the north side of the residence for approximately 10 minutes and then depart in the same vehicle. At approximately 2:30 p.m. I again observed Mack return in the 1966 Chevrolet and park on the east side of his residence by the south fence line. *At approximately 2:45 p.m. a turquoise panel van, Oregon license JAC 465, arrived and backed in the driveway on the east side of the residence so the rear of the van faced the door. At approximately 3:00 p.m. I observed Mack move from the residence to the inside of the back of the van two (2) times in such a manner that appeared as though he was loading something into the van. At that time a subject got into the van and began to leave* at the same time a black 1950 Chevrolet, Oregon license 5P 8266, arrived at the residence. I got in position to follow the van and as the van pulled out of the driveway I observed it to turn east onto Maxwell from Labona and *I followed the van east on Maxwell to River Road north on River Road to a Shell Service Station on the corner of River Road and Corliss Lane where the subject got gas, and then north on River Road and east on Beltline until the van took the Portland/I-5 exit northbound.*

"*At 3:30 p.m. on February 21, 1974 surveillance on the van, Oregon license JAC 465 was discontinued* and I returned to 1968½ Labona to continue sur-

veillance on the 1966 Chevrolet, Oregon license FBT 775, driven by Mack and the 1950 Chevrolet, Oregon license 5P 8266, registered to Douglas R. Capps. Upon returning I found both vehicles had departed and surveillance was discontinued until 9:00 a.m. on February 22, 1974 at which time I observed the large truck Oregon license T343027 registered to Wickes to still be present at the residence. Upon returning to the Lane County District Attorney's Office on February 22, 1974 I ran a check on Douglas R. Capps and records show that an indictment was returned on January 14, 1972 for Illegal Sale of Marihuana but was dismissed because the witness was unable to appear for court.

*"On February 22, 1974 I was informed by Richard Tenderella of the Oregon State Police Narcotics Unit, assigned to the Marion Interagency Narcotics Team that Gilbert Lloyd Greenwood was arrested at a Salem residence for CAID on February 21, 1974 and that a search was made resulting in the seizure of nine (9) bindles of cocaine and one (1) bag containing five (5) lids of marihuana from the subject's coat pocket and one (1) large grocery bag containing three (3) kilos of marihuana and one (1) grocery bag containing ½ kilo of marihuana from the back of the subject's van, Oregon license JAC 465, the van I observed leave 1968½ Labona, earlier in the afternoon.*

"Based on the above-described information, your affiant has probable cause to believe that the narcotic drugs marihuana and cocaine are currently located at the above-described residence or concealed in the vehicles Oregon license MGB 504, Oregon license FAQ 546, Oregon license T343027 and any other vehicles located on the premises of the above-described residence.

"WHEREFORE, your affiant prays this court issue a warrant for the search of the residence located at 1968½ Labona, Eugene, Lane County,

Oregon; further described as being a wood-frame, single-family dwelling, brown in color with yellow trim and a '½' sign on the front and located at the north end and west side of Labona Street, Eugene, Lane County, Oregon, and the vehicles Oregon license MGB 504, Oregon license FAQ 546, Oregon license T343027 and any other vehicles parked in the driveway and yard of 1968½ Labona. "* * * * *." (Emphasis supplied.)

■ It is true, as defendant asserts, that the mere fact that a person has been at some time earlier in his life engaged in unlawful drug activity does not, standing alone, furnish probable cause to support the issuance of a warrant for the search of his home or his person. *State v. Sagner*, 12 Or App 459, 506 P2d 510, Sup Ct *review denied* (1973); *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969). Such, however, is not the situation revealed here. This affidavit states facts tending to show:

1. Defendant's current association at his home with persons with prior illegal drug involvement;

2. Defendant's own prior arrest within the past four months on a drug charge, which arrest was within the personal knowledge of the affiant;

3. Defendant's prior modus operandi of constructing hidden compartments in vehicles to contain narcotics;

4. Information from an unnamed citizen that defendant had constructed a similar compartment in one of his vehicles;

5. Conformation of the citizen's reliability through an independent check of the registration of the defendant's ownership of the vehicle described by the informant, and of defendant's Falls City address; and

6. The observation of defendant in the afternoon apparently loading objects at and from the premises sought to be searched, which was his own home, into

the rear of the turquoise panel van, which was later that same day found to contain a large quantity of illegal drugs.

Perhaps the most persuasive facts set out in the affidavit are defendant's past involvement in unlawful drug activity, his present association with known drug users and a drug seller, and his apparent loading at and from his own home something into the van which was later that same day found to contain a large quantity of illegal drugs.

■ The dissenting opinion suggests that no consideration at all may be placed upon affiant's knowledge concerning the defendant's November 1973 arrest for a narcotics violation, even though it involved a totally unrelated offense which occurred months earlier, because in that case evidence seized in an illegal search of defendant's car was suppressed. The counter affidavit[1] does not contend that his November arrest for illegal drug activity was unlawful, nor does it say what disposition was made of the charge. Thus, under the Lane County rule, we think the trial court here could properly consider his prior arrest for a narcotics violation as one factor in determining the existence of probable cause.

■ Furthermore, even though the November charge had been dismissed because of the suppression order, application of the "attenuated connection" limitation rule would still warrant consideration of his known recent arrest for and involvement in illegal drug activity as a factor in determining the existence here of

---

[1] The only statement in the counteraffidavit relating to this matter is:

"That the search of the defendant's vehicle on the 30th day of November, 1973, giving rise to another criminal charge against the defendant, has previously been ruled by the honorable William Wells, to be an illegal search."

probable cause. That rule is summarized in Annotation, 43 ALR3d 385, 402, § 8 (1972):

> "Adhering to the view expressed in Nardone v. United States (1939) 308 US 338, 84 L Ed 307, 60 S Ct 266, that while sophisticated argument might prove a causal connection between official illegality and the government's proof, such evidence should not be excluded where the connection has become so attenuated as to dissipate the taint, courts in several cases have recognized that, under a limitation of the 'fruit of the poisonous tree' doctrine, facts not obtained from an independent source but distant in causal connection from an illegal search and seizure are admissible in evidence. [Citations omitted.]"

We think the fact that different and unrelated evidence to that here involved was suppressed in a wholly unrelated charge occurring months earlier and in no way connected to the crime charged here comes within the attenuated connection limitation of the "fruit of the poisonous tree" doctrine described above.

■ In *State v. Tacker,* 241 Or 597, 407 P2d 851, 10 ALR3d 355 (1965), quoting from *United States v. Ventresca,* 380 US 102, 108-09, 85 S Ct 741, 13 L Ed 2d 684 (1965), the court said:

> "* * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of the criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"* * * Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where the circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. * * *'" 241 Or at 601-02.

We conclude that the affidavit for the search warrant for defendant's residence established probable cause for the issuance of the warrant.

■ The second affidavit for the search of defendant's rented garage at another location clearly asserts facts sufficient to establish probable cause to search the garage. Summarized, it states the affiant state police officer went to a place where there was a row of garages available for rental to the public, that from a distance of 10 feet he looked through the window of the one for which the rent receipt found in defendant's wallet at the time of his arrest had been issued, that he observed a vehicle whose license showed it was registered in defendant's name, and that he saw in the vehicle a package which, based on 19 years' police experience, he believed contained a kilo of marihuana.

■ Defendant contends the officer committed a trespass in looking through the window of the garage. The garage here was number 44B belonging to a Rent-A-Garage, Inc., which is one of a number of aluminum appearing silver metal garages located in a row on

the east side of Franklin Boulevard, Springfield, Oregon, as is stated in the affidavit. Defendant's right of occupancy thus was exclusive only to the garage he rented. Defendant had no reasonable expectation of privacy in the common area shared by all the users of the rented garages. *State v. Stanton,* 7 Or App 286, 294, 490 P2d 1274 (1971). To look through the garage window from a place where the officer had a right to be is not a trespass. *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), Sup Ct *review denied* (1970).

The motions to suppress were correctly denied.

Affirmed.

SCHWAB, C. J., dissenting.

I think there are two questions in this case: (1) does the affidavit in support of a warrant to search defendant's residence contain information that is the fruit of a prior illegal search; and (2) if so, does the balance of the affidavit establish probable cause. On this record, I believe both questions must be resolved in defendant's favor, and therefore would reverse and remand.

(1)   Prior illegal search.

As required by a local rule of the Lane County circuit court, defendant's motion to suppress was supported by affidavit. The motion alleged in part:

"B. That information contained on lines 20 through 24 of Page One of the Affidavit for the Search Warrant and 1 through 3 of Page Two of the Affidavit for the Search Warrant was illegally obtained as has been already adjudicated in Lane County Circuit Court in the case arising out of the fact indicated in said parts of the Affidavit."

The supporting affidavit alleged in part:

"That the search of the defendant's vehicle on the 30th day of November, 1973, giving rise to

another criminal charge against the defendant, has previously been ruled by the Honorable William Wells, to be an illegal search."

The part of the search-warrant affidavit thereby attacked by defendant read:

"* * * I am familiar with Arthur William Mack and know that he was arrested for possession of marihuana and possession of cocaine on November 30, 1973; that he had made a similar compartment in another vehicle, Oregon license 9J 7102, and had narcotics hidden in that compartment as well as in compartments in a second vehicle, Oregon license H902963, both vehicles being registered to Arthur Mack * * *."

In other words, what has happened here is that the present search-warrant affidavit, dated February 22, 1974, incorporates information about a prior, November 30, 1973, search of one of defendant's vehicles, discovery of drugs in a hidden compartment, and arrest of defendant at that time. It is this November 30 information that defendant claims was illegally obtained.

Practice and procedures under the relevant Lane County local court rule are discussed in: *State v. Downes,* 19 Or App 401, 528 P2d 110 (1974), Sup Ct *review denied* (1975); *State v. Fitzgerald,* 19 Or App 860, 530 P2d 553 (1974); *State v. Miller,* 17 Or App 352, 521 P2d 1330, *aff'd* 269 Or 328, 524 P2d 1399 (1974). These cases point out that the purpose of the local rule is to narrow the factual disputes.

"* * * If [factual] disputes exist, then a hearing should be held to resolve them. If the facts are not disputed, no hearing is required. There is no valid purpose served in calling, questioning and cross-examining witnesses unless the facts to be proved by those witnesses are in dispute." *State v. Downes,* 19 Or App at 406.

These cases also seem to state, or at least strongly

imply, that allegations in affidavits filed pursuant to the local rule are assumed to be true unless and until controverted.

> "* * * Defendant did not file or seek to file a counter-affidavit denying or explaining any of the facts as set forth in the affidavit filed by the state * * *." *Downes,* 19 Or App at 406.

The facts at bar are: (1) the defendant has, by motion to suppress and supporting affidavit, alleged that part of the contents of the instant search-warrant affidavit was illegally obtained; and (2) the state has not filed any counter-affidavit denying defendant's allegation. Under the relevant Lane County local rule, as interpreted in *Miller, Downes* and *Fitzgerald,* further analysis of the probable-cause question should proceed on the assumption that defendant's allegation is true.

(2) Probable cause.

The next question is, once the part of the search-warrant affidavit alleged without controversy to be the product of a prior illegal search is disregarded, does the balance of the affidavit establish probable cause to search defendant's residence. My answer is "no."

The majority's analysis to the contrary is that the following facts in the affidavit establish probable cause.

"1. Defendant's current association at his home with persons with prior illegal drug involvement."

Actually, the affidavit only connects defendant with two vehicles owned by persons with prior drug involvement, although it is possible to infer association with persons from connection with their vehicles.

"2. Defendant's own prior arrest within the past four months on a drug charge * * *."

This refers to the part of the search-warrant affidavit describing the November 30 search of defendant's vehicle and arrest of defendant. However, the November 30 events have been established to have been the product of an illegal search. They have to be disregarded.

"3. Defendant's prior modus operandi of constructing hidden compartments in vehicles to contain narcotics."

Knowledge of defendant's "prior modus operandi" was also a product of the November 30 search, which was illegal, and thus the knowledge gained at that time cannot here be considered.

"4. Information from an unnamed citizen that defendant had constructed a similar compartment in one of his vehicles;

"5. Confirmation of the citizen's reliability through an independent check of the registration of the defendant's ownership of the vehicle described by the informant, and of defendant's Falls City address * * *."

According to the search-warrant affidavit, the informant told the officer: (a) many people visited defendant's house, staying short periods of time; (b) defendant had "cut out one inside panel of the bed of" his pickup truck; and (c) another of defendant's vehicles had Oregon license number MGB 504. It was only this last item that the officer confirmed independently; the officer could not "confirm" what the informant said about "defendant's Falls City address" for the simple reason that the informant said nothing about it—that information came from a different person, defendant's landlord. With so little confirmation of what the informant had said—only the registration check of one vehicle—it is doubtful that the informant's reliability was sufficiently established. But in any

event, the informant's most significant report—that defendant was constructing a hidden compartment in one of his vehicles—loses its significance when we remember the fact that defendant had done similar things in the past is part of the search-warrant affidavit we cannot consider because of the illegal-search issue.

"6. The observation of defendant in the afternoon apparently loading objects at and from the premises sought to be searched, which was his own home, into the rear of the turquoise panel van, which was later that same day found to contain a large quantity of illegal drugs."

This adds little or nothing under *State v. Fahey,* 7 Or App 23, 489 P2d 980 (1971), and *State v. Metler,* 6 Or App 356, 487 P2d 1377 (1971), in which we held that an allegation that somebody was seen carrying undescribed items into or out of premises where drugs were later discovered does not amount to probable cause to search all other places the undescribed items were transported to or from.

In summary, once the fruits of a prior illegal search are excised from this search-warrant affidavit, what remains is not sufficient to establish probable cause.

For the foregoing reasons I respectfully dissent.