Argued and submitted September 2, affirmed October 26, 1988

## STATE OF OREGON,
*Respondent,*

*v.*

## GREGORY MARK ROHRBACH,
*Appellant.*

(10 87 05887; CA A47961)

763 P2d 196

Robert J. McCrea, Eugene, argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Graber and Riggs, Judges.

GRABER, J.

## GRABER, J.

Defendant was convicted of unlawful manufacture of a controlled substance. ORS 475.992(1). He assigns as error the denial of his motion to suppress evidence obtained as a result of the warrantless search of his residence, arguing that his estranged wife had no authority to consent to the search.[1] We affirm.

In March, 1987, defendant's wife and daughters went to California to visit family members. In May, the wife decided to stay and to separate permanently from defendant. On June 10, defendant made an unexpected visit to California and took the children for what he said would be an overnight trip to see his parents. Instead, he brought the children back to Oregon without the wife's consent or knowledge. On June 13, the wife returned to Oregon to find the children and to pick up their belongings from the family home. While there, she discovered marijuana plants. Defendant had told her that he was involved in growing marijuana. She called the police and consented to a search of the family home.

After the supression hearing, the trial court made these findings:[2]

"The premises had been the marital residence of the defendant husband, his wife and their two daughters since the fall of 1985.

"The wife and daughters left the residence in March of 1987 to visit family in California with the intent to return.

"The wife and daughters had not moved from the residence at the time of the consent. All their personal belongings were in the marital home with the exception of the minimal items of clothing they had taken for their visit.

"The wife had a key to the premises and a legal right to full access and use of the marital home; no proceedings had been

---

[1] Defendant relies only on cases decided under the Fourth Amendment. He makes no separate claim under Article I, section 9, of the Oregon Constitution.

[2] The trial court prefaced its *conclusions* with the phrase, "The Court *finds*." (Emphasis supplied.) The quoted material followed, after this introduction: "The court's findings are based on the following credible testimony." Although the court did not label the quoted paragraphs "findings," they state historical facts that the trial court believed after hearing conflicting evidence. Therefore, we treat them as findings of fact.

initiated to terminate the marriage or limit the access of the wife to the marital home at the time of the consent.

"Defendant encouraged and welcomed wife to return to the premises and regarded it as the marital residence with right to common use and access.

"Defendant went to California, picked up the daughters for an overnight visit with his parents, and brought them back to the marital home without the consent and knowledge of the wife.

"Defendant knew the wife didn't want the children exposed or involved in the marijuana situation and should have reasonably expected, and possibly hoped, that the wife would return to the marital residence if the children were taken there."

Defendant argues that the findings are not supported by evidence in the record. They are and, consequently, we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

■　　　The pivotal issue is whether those findings support the conclusions that the wife had a "sufficient relationship to the premises" to consent to the search and that defendant assumed the risk that she might permit the premises to be searched. It is well established under the Fourth Amendment that a valid consent to search may be given by a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 US 164, 171, 94 S Ct 988, 39 L Ed 2d 242 (1974), *quoted in State v. Carsey,* 295 Or 32, 39, 664 P2d 1085 (1983). Sufficient "common authority" exists if the third party has the right to permit the inspection and if the affected party "has concurrently either assumed the risk that the other may consent to a search or given up his reasonable expectation of privacy." *State v. Williams,* 48 Or App 293, 297, 616 P2d 1178 (1980). The consenting party's authority to permit the inspection must be actual, not just apparent. *State v. Carsey, supra,* 295 Or at 44-46.

■■　　A wife who has a shared right to control the family home may consent to a search of it. *State v. Middaugh,* 12 Or App 589, 507 P2d 42 (1973). Her consent is valid even if she is not present during the search and even if the husband objects. *State v. Frame,* 45 Or App 723, 609 P2d 830, *rev den* 289 Or 587 (1980), *cert den* 450 US 968 (1981). The question here is whether, as defendant argues, the wife relinquished her authority to consent to a search by separating from defendant

and returning to the home only to find the children and to retrieve her and their effects (that is, for the purpose of setting up a different residence).

Defendant relies on *State v. Wyman,* 59 Or App 542, 651 P2d 195 (1982), for the proposition that, after the wife left, she no longer had joint authority over the premises sufficient to consent to a search. *Wyman* is inapposite, because the issue there was the scope of the *defendant's* consent, not the consent of a third party, his girlfriend. Further, the facts on which we found the absence of joint control were materially different; the third party was a girlfriend who had already moved out of the *defendant's* house.

Here, in contrast, the third party is defendant's wife who had not yet moved out of the family home.[3] She had her own key to the home, and most of her belongings remained there. Defendant regarded the home as theirs and had encouraged his wife to return. No proceedings had been initiated to dissolve the marriage or to limit the wife's access to the home. Notwithstanding her intention to move, and whatever her motive in inviting the police to search, she retained actual authority to consent to the search, and defendant assumed the risk that she might allow the home to be searched.

Affirmed.

---

[3] Defendant argues that his wife had already moved out. For example, she told the police officers who conducted the search that her residence was in San Pablo, California. However, the evidence is conflicting, and we are bound by the trial court's finding that she had not yet carried out her intention to move. We also note that she could have more than one "residence" for the purpose of consenting to search.