Argued and submitted October 31, 1996, affirmed September 17, 1997

STATE OF OREGON,
*Appellant,*

*v.*

RUSSELL VINCENT WRENN,
*Respondent.*

(C 95-03-32353; CA A89879 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

MARVIN CALVIN BANKY,
*Respondent.*

(C 95-03-32352; CA A89880)
(Cases Consolidated)

945 P2d 608

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Katherine H. Waldo, Assistant Attorney General.

Irene B. Taylor, Deputy Public Defender, argued the cause for respondent Marvin Calvin Banky. On the brief were Sally L. Avera, Public Defender, and Stephen J. Williams, Deputy Public Defender.

No appearance for respondent Russell Vincent Wrenn.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendants Wrenn and Banky were indicted on charges related to the possession and manufacture of controlled substances.[1] Both defendants moved to suppress all evidence seized as a result of a warrantless search of a mobile home in which they were staying. The trial court granted defendants' motions in part, and the state now appeals that order.[2] ORS 138.060(3). We affirm.

We summarize the facts from the trial court's findings. Gresham police received information from a woman named Paula Reed that there were illegal drug activity and stolen checks at the trailer in which she lived. Gresham police relayed that information to Portland police, and officers Scott and Russick went to the trailer to investigate. After they knocked on the back door, they heard the dead bolt close. They also heard noises indicating that more than one person was inside. About one minute later, Banky stepped out of the front door of the trailer and quickly shut the door. The officers explained that they had no search warrant but were there because they had received information concerning drugs and stolen checks. Banky informed them he was "homeless" and that he had been sleeping on the couch for a couple of days. He consented to a search of his person, and no drugs or weapons were found. Banky then consented to a search of the trailer. The officers entered the living room and noticed that the bedroom door was closed. After being asked more than once to come out, Wrenn eventually emerged, leaving the bedroom door open. When Scott looked into the bedroom, he could see a beaker caked with a white substance that he believed was methamphetamine, but said nothing at the time. Russick obtained Wrenn's consent to search his person and found a bag of what Russick believed was methamphetamine. Wrenn was then handcuffed and led outside.

---

[1] Both defendants were indicted on one count each of manufacture of a controlled substance within 1,000 feet of a school, ORS 475.999; delivery of a controlled substance within 1,000 feet of a school, ORS 475.999; manufacture of a controlled substance, ORS 475.992; and delivery of a controlled substance, ORS 475.992. Defendants were also indicted on two counts of possession of a controlled substance, ORS 475.992

[2] Wrenn made no appearance on appeal.

At some point while Russick was dealing with Wrenn, Scott entered the bedroom and saw the beakers with white residue, syringes and other paraphernalia. He thought the bedroom was being used as a methamphetamine lab. He also found two bags of methamphetamine in the kitchen and told Russick what he had seen. After Russick confronted Wrenn with what Scott had seen, Wrenn consented to a search of the bedroom although he had previously denied that there were any drugs there. Russick then went into the bedroom and also concluded that it was being used as a methamphetamine lab. Subsequently, Wrenn told officers that he had been living in the bedroom for a few weeks with Reed, and Banky admitted that they had been "experimenting" in the bedroom.

Before trial, each defendant moved to suppress all evidence on the ground that its seizure was the result of a warrantless search. During a joint suppression hearing, the prosecutor argued that the evidence found in the bedroom and kitchen was admissible under the consent exception to the warrant requirement. However, the trial court, for the most part, disagreed. It found that, although Banky had voluntarily consented to the officers' initial entry into the trailer, Banky did not have actual authority to give consent to search beyond the living room where he was staying. Because Banky lacked actual authority to give consent, the trial court found that his consent was not valid. The trial court also concluded that Wrenn's consent to search the trailer was also invalid because Russick obtained it after the initial search had already been conducted.[3] However, the court determined that Wrenn voluntarily consented to the search of his person. Based on those conclusions, the court issued a single order suppressing the evidence that resulted from the searches of the bedroom and kitchen, but denying the motion to suppress the methamphetamine found in Wrenn's pocket.[4]

---

[3] Although the court did not give its specific reasons, it appears that the court concluded that Wrenn's consent was invalid because, in obtaining his consent, Russick confronted Wrenn with the methamphetamine Scott found in the kitchen and bedroom.

[4] Defendants' motions sought suppression of any oral statements made by defendants in addition to the suppression of evidence seized. However, the trial court's order did not address the admissibility of defendants' statements, and that

The state's first assignment of error is that the trial court erred in granting Banky's motion to suppress; its second is that the trial court erred in granting Wrenn's motion to suppress. The assignments are necessarily interrelated to some degree and are complicated somewhat by the differing emphasis taken by the state on appeal from its position below.

Before addressing the merits of the state's arguments that were sufficiently raised and preserved, we must clarify what we are *not* considering. At oral argument, for the first time, the state contended that: (1) even though Banky lacked actual authority to consent to the search of the premises, his consent was, nevertheless, a waiver of whatever privacy rights that he may have had in the entire trailer; and, thus, (2) even if the evidence was not admissible against Wrenn because Banky lacked authority to consent, it was nevertheless admissible against Banky. Although that contention might have merit, it was not made to the trial court, and Banky did not have an opportunity to respond to it. Nor was that contention briefed to this court. Consequently, we do not address it. ORAP 5.45; *see State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (generally, on appeal a criminal case should be heard on same theory on which it was presented in court below).

In its first assignment of error, the state asserts that the trial court erred in granting Banky's motion to suppress the evidence found in the bedroom and kitchen, because Banky had no constitutionally protected interest in those areas or the items found there. Banky responds that the state failed to raise and preserve that contention.

■        To determine whether an issue is preserved for appellate review, we consider whether the appellant raised the issue below or identified a source for his position or made a particular argument. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). The first consideration is essential. *Id.* The second and third considerations are progressively less important. *Id.* The purpose of the rule is to allow the trial court to

issue was not raised on appeal. Accordingly, the admissibility of defendants' statements is not before us.

understand and correct any error. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990).

At the suppression hearing, the state's argument was that Banky had actual authority to consent to the search of the entire trailer. Banky responded that he had a right to challenge the search because of his privacy interest. The prosecutor answered that, if the court found that Banky did not have authority to consent to a search, Banky could not show that he had a protected privacy interest. In other words, the state took the position that Banky's authority to consent to a search was coextensive with his privacy interest.

■ On appeal, the state has abandoned its position that the privacy interest and right to consent are coextensive. The state acknowledges that actual authority to consent may differ from the scope of a protected privacy interest.[5] We do not conclude, however, as Banky urges, that the state's abandonment of that argument means that the privacy issue was not preserved in a posture capable of review. Both parties addressed the issue, and the court's ruling implicitly held that Banky's privacy interest extended to the entire trailer. We agree with the state that the issue of Banky's privacy interest in the areas searched was sufficiently raised at the trial court. We turn to the merits.

The state argues that Banky failed to demonstrate a constitutionally protected interest in the back bedroom because he failed to show a privacy interest under Article I, section 9,[6] in the bedroom or possessory interest in any item

---

[5] The state explicitly "does not urge the court to adopt a *per se* rule that the scope of a person's actual authority to consent to a search of a residence is necessarily coextensive with the scope of that person's privacy interest." It explains:

"In some cases actual authority to consent may differ from the scope of a protected privacy interest. For example, an individual might, as in [*State v.*] *Tanner*, [304 Or 312, 745 P2d 757 (1987),] entrust possessions to another for storage in the other person's residence. The person entrusting the items would likely have *no* actual authority, as a factual matter, to consent to police searching a room in the other person's home but at the same time, he may have a derivative protected privacy interest in that area of the residence under Article I, section 9. *Tanner*, 304 Or at 322. Similarly, a child may not necessarily have actual authority to consent to police searching an area of a residence, *see, e.g.*, *State v. Will*, 131 Or App 498, 885 P2d 715 (1994) (eight-year-old lacked actual authority to consent to police entering home), but that child might still have a protected privacy interest in the same area." (Emphasis in original.)

[6] Article I, section 9, provides:

found there.[7] Banky argues that his privacy interest in the bedroom was established by his residence in the trailer. For the following reasons, we agree with Banky.

■, ■ It is a well-established rule that the Oregon Constitution does not require the suppression of illegally obtained evidence unless the defendant first shows a constitutionally protected privacy interest in the area searched. *State v. Tanner*, 304 Or 312, 315-16, 745 P2d 757 (1987). In *Tanner*, the Supreme Court commented: "Residence in a house is uniformly deemed to be a sufficient basis for concluding that the violation of the privacy of the house violated the residents' privacy interests[.]" *Id.* at 321. Banky was a resident of the trailer, albeit a temporary one. As a temporary resident, his privacy interests may not have been as extensive as those of a permanent resident. *See id.* (a guest's privacy interest would not be as extensive as a resident's privacy interest). However, there is evidence that Banky's residency included access to all areas of the trailer. Russick testified that Banky had told him that Banky was in the bedroom with Wrenn when the police first arrived. Based on his residence in the trailer, and in the absence of any evidence that his access was restricted in some manner, we conclude that Banky met his burden of showing a privacy interest in the entire trailer.

The state's second assignment of error is that the court erred in granting Wrenn's motion to suppress because the searches of the bedroom and the kitchen followed a valid consent by either Banky or Wrenn. We address the issue of Banky's consent first.

The state argues that, even if Banky did not have authority to consent to a search of the bedroom, he did have actual authority to consent to a search of not only the living room but also the open kitchen area where methamphetamine was found. Thus, the state contends, if Banky had

---

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[7] Banky does not argue that he had any possessory interest in the items found in the bedroom.

actual authority to consent to a search of the kitchen, then there is no ground to hold that the discovery of the methamphetamine in the kitchen was illegal and no basis to find that Wrenn's subsequent consent was a product of illegal police conduct.

■      As noted above, the state acknowledges that the question of whether Banky had authority to consent to a search of the kitchen is not the same as whether he had a privacy interest in the area searched. To determine whether Banky had actual authority to consent to the search of the kitchen, we must determine whether Banky had authority in the light of his use of, access to, and control of the premises. *State v. Lambert*, 134 Or App 148, 152, 894 P2d 1189 (1995).

■      The state insists that the evidence does not support the trial court's conclusion that Banky's authority ended at the living room. It points out that the trailer was only 40 feet long and that there was no physical barrier between the kitchen and the living room.[8] Relying on those facts, the state contends that "defendant bore the burden of coming forward with some evidence from which the court could find that Banky's actual authority ended somewhere in the physical space between the living room and the kitchen." We disagree. The state, not Banky, had the burden to prove the scope of Banky's authority to consent to a search of the trailer. ORS 133.693(4); *State v. Arnold*, 115 Or App 258, 261, 838 P2d 74 (1992), *rev den* 315 Or 312 (1993).

■      Whether a third party has actual authority to consent to a search of a given area "necessarily involves resolution of factual issues." *State v. Ready*, 148 Or App 149, 153, 939 P2d 117 (1997). We are bound by the trial court's findings of fact where the evidence supports those findings. *Ball v. Gladden*, 250 Or App 485, 487, 443 P2d 621 (1968).

■      Here, the trial court found that Banky responded to the knock on the trailer door by leaving through the front

---

[8] We note that, although a diagram of the interior of the trailer was prepared and used during the suppression hearing, the diagram was not offered into evidence or otherwise made a part of the record on appeal.

door of the trailer. He told the officers that he had been "staying" at the trailer for a couple of days. The evidence also shows that his belongings were in the trailer.[9] Although these facts may be relevant to the question of whether a third party has actual authority to consent to a search, *see Lambert*, 134 Or App at 152,[10] in this case they do not show that Banky had actual authority as to the kitchen area. On these facts, we conclude that the trial court did not err in suppressing the evidence found in the search of the kitchen.

The state also argues that the trial court erred in concluding that Wrenn's consent was not valid because, it contends, the evidence is insufficient to support the trial court's finding that Scott entered the bedroom before Wrenn's consent. In particular, the state argues that the court was confused by Russick's use of the pronoun "he" when Russick testified that Wrenn consented after Russick told Wrenn that "Officer Scott had seen drug manufacturing paraphernalia inside *the room he just exited.*" According to the state, the "he" in that phrase refers to Wrenn, not to Scott as the court assumed. Consequently, the court incorrectly found that Scott had been in the bedroom before he talked to Russick. The state insists that other evidence establishes that Scott walked into the hallway and only looked into the bedroom before discussing his observations with Russick. Therefore, because Scott's observations were made from a lawful vantage point, the state concludes that there was no "search."

Where there is evidence in the record to support the trial court's findings of fact, we will not disturb them. *State v. Carston*, 323 Or 75, 86, 913 P2d 709 (1996); *Ball*, 250 Or at

---

[9] The court determined that Banky did have authority to consent to a search of the area in which he was living and had his personal belongings. That conclusion is not challenged on appeal, and we express no opinion about its correctness.

[10] For example, in *State v. Lambert*, 134 Or App 148, 894 P2d 1189 (1995), when the officers knocked at the door of the residence, the third party answered. *Id.* at 152. The third party told the officers that she lived in the residence and that she kept her belongings at the residence. She brought her belongings to the officers to show them. She knew the layout of the residence. She also knew who else lived at the residence. *Id.* The defendant's evidence consisted solely of a copy of the rental agreement that did not have the third party's name on it and that said that only the named renter could occupy the residence. *Id.* at 152-53. We concluded that that evidence was not pertinent to whether the third party had joint access to or control of the residence for most purposes and was not sufficient to overcome the state's evidence to the contrary. *Id.* at 153.

487. Here, the evidence supports the trial court's findings. Even if we assume that the trial court misinterpreted Russick's testimony, Scott testified that he saw a beaker caked with a white substance after Wrenn walked out of the bedroom. Scott then testified that, as Russick was dealing with Wrenn,

> "I *walked back* and I looked. I could see numerous other beakers, hypodermic syringes, glassware, chemicals, and I believe[d] there was a meth lab there or precursor thereof.
>
> "* * * * *
>
> "I detected an odor in the back bedroom, and I started to feel a little bit nauseated. That's when I *walked out* and I told Officer Russick what I saw." (Emphasis supplied.)

That testimony is sufficient to support a finding that Scott entered the bedroom before Wrenn consented to the search.

The state also contends that Scott was in the hallway just outside the bedroom door when he made his observations. However, the trial court limited Banky's authority to consent to a search of the living room, and the state does not explain why, contrary to that finding, Banky could consent to Scott's presence in the hallway. Therefore, even if Scott did not actually enter the bedroom as the state insists, he still observed the evidence from an area in which he was not entitled to be.[11]

We conclude that the evidence supports the trial court's finding that Scott searched the bedroom illegally. The state makes no argument that Russick did not exploit the illegally discovered evidence to obtain Wrenn's consent, and the state cannot rely on that consent to justify the searches. The trial court did not err in granting both defendants' motions to suppress the evidence seized during the searches of the bedroom and the kitchen of the trailer.

Affirmed.

---

[11] Related to this argument, the state contends that, even if Scott actually crossed the threshold of the bedroom, the intrusion was *de minimis.* In other words, Scott had already seen the beaker and syringes from the doorway, and, consequently, he obtained no new information from the intrusion into the bedroom. Again, the state does not explain how Scott was legally outside the bedroom door. However, we do not need to reach this argument because the state did not make it to the trial court. ORAP 5.45(2).