Argued and submitted July 29, 1998, reversed and remanded for new trial
February 17, 1999

## STATE OF OREGON,
### *Respondent,*

*v.*

## RANDY EARL FULLER,
### *Appellant.*

## (9602-31291; CA A94645)

976 P2d 1137

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Sally L. Avera, Public Defender. With him on the reply brief was Diane L. Alessi, Interim Public Defender.

Douglas F. Zier argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

De Muniz, J., dissenting.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for delivery and possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence and statements obtained during a search and seizure of his personal effects. We review for errors of law, ORS 138.220, and reverse and remand for a new trial.

We state the facts as found by the trial court where there is evidence in the record to support them. Where the trial court failed to expressly articulate a factual finding, we assume that it decided the facts in a manner consistent with its ultimate conclusions, so long as there is evidence in the record to support those conclusions. *State v. Juarez-Godinez,* 326 Or 1, 7, 942 P2d 772 (1997).

In February 1996, Officer Durbin stopped Jennie Stites for a minor traffic infraction. Defendant was a passenger in Stites's car. Durbin observed signs of possible drug use by Stites and, on inquiry, Stites admitted to putting some "meth" in her coffee at home the day before. Durbin did not issue a traffic citation but asked Stites and defendant if he could search the vehicle. Both consented, and no contraband was found. Durbin then asked Stites if he could search her home for drugs. Stites, on probation at the time, agreed. After obtaining permission from Durbin to leave, defendant departed on foot. Durbin then accompanied Stites to the house that she and defendant shared. Stites gave Durbin a key to the front door and, after they entered, directed Durbin to a nightstand in one of the bedrooms. Durbin testified that Stites told him that she shared the bedroom with defendant and that there was marijuana in the right nightstand. Women's clothing hung in the closet, which Durbin assumed belonged to Stites.

After finding marijuana and rolling papers in the right nightstand, Durbin explained to Stites that he could obtain a search warrant to search the rest of the house for drugs but asked that Stites just show him where other drugs were located. Stites pointed to defendant's nightstand on the left side of the bed and stated that there was "crank," or

methamphetamine, in it. Stites told Durbin that defendant had given her methamphetamine out of his nightstand before and that she had taken the drug from the nightstand on her own when it was unlocked. However, she stated that if defendant's nightstand was locked, she did not have a key and could not open it. According to Durbin, the drawer was unlocked and partially open. In the top drawer, Durbin found several clear bags of methamphetamine, as well as paraphernalia for its use and sale. Shortly after this discovery defendant returned home. Durbin placed defendant under arrest for possession of a controlled substance. Even though Durbin's police report indicated that Stites was not under arrest, Durbin read both defendant and Stites their *Miranda* rights. Defendant then allegedly admitted that the methamphetamine was his, that he bought it with the intent to divide and sell it, and that he put some in Stites's coffee the day before. Durbin took defendant to the police station for processing, but Stites was allowed to remain at the house. An hour or two later, Stites arrived at the police station looking for defendant, and Durbin issued Stites citations for Possession of a Controlled Substance I and II, as well as for possession of less than an ounce of marijuana.

At trial, defendant moved to suppress his statements and the physical evidence seized at the time of his arrest as fruits of an illegal search. *State v. Warner,* 284 Or 147, 166, 585 P2d 681 (1978). The trial court denied the motion, and the parties agreed to a stipulated-facts trial. Defendant was found guilty, and this appeal followed.

On appeal, defendant presents two arguments to support his assignment that the court erred in denying his motion to suppress. Because we find defendant's second argument dispositive, we do not address the first. Defendant contends that Stites did not have actual authority to consent to the search of his nightstand. The state argues that Stites did have authority to consent to a search of the bedroom—which included the nightstand—and that, in any event, the evidence was properly seized pursuant to a lawful search incident to arrest. We agree with defendant and reverse.

**1.** Under Article I, section 9, of the Oregon Constitution,[1] a warrantless search is *per se* unreasonable unless it falls within one of the limited exceptions to the warrant requirement. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Consent is an exception to this rule and may be given by a person with the actual authority to do so. *State v. Ready*, 148 Or App 149, 152-53, 939 P2d 117, *rev den* 326 Or 68 (1997); *State v. Arnold*, 115 Or App 258, 262, 838 P2d 74 (1992), *rev den* 315 Or 312 (1993). In determining whether a third party's consent is valid, we measure the relationship of the third party to the premises or the things searched. *State v. Lambert*, 134 Or App 148, 152, 894 P2d 1189 (1995). A third party must have common authority as shown by that person's "joint use or occupancy of the premises" before validly authorizing the search. *State v. Carsey*, 295 Or 32, 44-45, 664 P2d 1085 (1983). It is the state's burden to show that Stites had actual authority to consent to a search of the bedroom and nightstand. *City of Portland v. Paulson*, 98 Or App 328, 330, 779 P2d 188 (1989). The trial court ruled that the state presented "sufficient proof to show that there was joint control of the bedroom area." Because there is evidence in the record to support that finding, we will not disturb it. *State v. Carston*, 323 Or 75, 86-87, 913 P2d 709 (1996).

The facts support the trial court's findings that Stites had joint control of the bedroom and gave valid consent for the police to search it. The evidence supporting a conclusion that Stites and defendant shared the bedroom and thus shared "joint control" over the room included: Durbin's testimony that Stites admitted to sharing the bedroom with defendant; Stites's knowledge of the room and contents of the nightstands; the women's clothing in the closet; and the absence of witnesses to rebut the appearance of cohabitation.

---

[1] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

*See City of Portland,* 98 Or App at 331 (where the only evidence of cohabitation was the officer's testimony, the evidence was insufficient). These, taken together, support a finding of joint occupancy of the bedroom.

■     Even with joint occupancy, however, a third party's ability to authorize a search within the bedroom may be limited. *See State v. Wrenn,* 150 Or App 96, 103, 945 P2d 608 (1997) (where state did not produce evidence to show that house guest's actual authority to consent to search of living room also included kitchen, consent was invalid). Central to search and seizure law is whether an individual has, in some way, assumed the risk that a third party may legally consent to a search of that individual's property. *State v. Rohrbach,* 93 Or App 608, 611, 763 P2d 196 (1988). Therefore, authority to consent to a search of an area is not necessarily coextensive with authority to consent to a search of personal items within that area. We have held, for example, that the owner of a vehicle has the authority to consent to a search of his or her car but does not automatically have the authority to allow a search of a passenger's personal effects within that car. *State v. Edgell,* 153 Or App 108, 112, 956 P2d 988 (1998); *State v. Lynch,* 94 Or App 168, 172, 764 P2d 957 (1988). Whether a roommate can authorize the search of a particular area, or the effects within that area, depends on the extent of the roommate's "use of, access to, and control of the premises," or effects therein. *Wrenn,* 150 Or App at 103. We look at whether the effects are communally used by the parties, *Lynch,* 94 Or App at 172, or exclusively used by one party, *State v. Fitzgerald,* 19 Or App 860, 865, 530 P2d 553 (1974).

■     Because defendant's nightstand was personal property within the bedroom, we separately examine whether there is evidence to support the trial court's implicit conclusion that Stites had actual authority to consent to a search of defendant's nightstand. The facts viewed consistently with this conclusion indicate that Stites had taken drugs out of defendant's nightstand before and that defendant often locked the drawer of his nightstand to which Stites did not have a key. As an initial matter, the fact that the drawer was unlocked does not, in and of itself, allow an inference that Stites was permitted to open the drawer; neither does taking

into account her conduct with respect to the drawer. Her *ability* to open and occasionally access the unlocked drawer, in the absence of any evidence of permission or acquiescence by defendant, does not, as a matter of law, support an inference that Stites was *actually authorized* to open or exercise control over the nightstand. By way of further illustration, we would not infer that one roommate had authority over the other's briefcase simply because the one had, on occasion, opened the briefcase when it was unlocked and taken something from it, unless there was evidence of consent to or acquiescence in such access. Similarly, here there is no evidence that defendant knew that Stites was getting into the nightstand, much less that he explicitly authorized or even implicitly acquiesced in that conduct. Thus, as a matter of law, the evidence, even when viewed in the light most favorable to the state, was insufficient to support an inference that Stites had actual authority to consent to a search of defendant's nightstand.[2]

■■ The state raises the argument, for the first time on appeal, that even if Stites did not have actual authority to consent to a search of defendant's nightstand, the evidence was still properly seized as a search incident to arrest. *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986). Under the Oregon Constitution, a valid search incident to arrest is limited to a search of evidence of a crime for which a proper arrest is made or for which there is probable cause to arrest. *Id.* at 204. Specifically, the state argues that the police had probable cause to arrest Stites on drug possession charges after she revealed marijuana inside her nightstand and admitted to prior "meth" use at the house. While we may affirm a trial court's ruling on a different ground, "we may not do so if neither the * * * [opposing party] nor the trial court was put on notice that a factual issue necessary to resolve that new ground was involved." *State v. Armenta,* 74 Or App 219, 223, 702 P2d 1113 (1985). Here, the factual record is insufficiently developed as to probable cause for arrest,

---

[2] The dissent admonishes us for inferring the fact that Stites lacked actual authority to consent. We make no such inference. Rather, the state bears the burden of proving actual authority, and we merely point out that, as a matter of law, there is insufficient evidence to support a factual inference or conclusion that Stites had actual authority over the nightstand.

and we will not consider the state's search incident to arrest arguments. *See State v. Kruchek,* 156 Or App 617, 624-25, 969 P2d 386 (1998) (refusing to consider state's search incident to arrest argument on appeal because the factual record was insufficiently developed).

Because Stites lacked actual authority to consent to a search of defendant's nightstand, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.

**DE MUNIZ, P. J.,** dissenting.

Defendant concedes that Stites consented to the search of the house and bedroom that she and defendant jointly occupied. However, in spite of that conclusion, and the trial court's finding that the state presented "sufficient proof to show that there was joint control of the bedroom," the majority accepts defendant's argument that Stites "did not have authority to consent to a search of [defendant's] nightstand." In doing so, the majority holds that

"[Stites's] *ability* to open and occasionally access the unlocked drawer, in the absence of any evidence of permission or acquiescence by defendant, does not, as a matter of law, support an inference that Stites was *actually authorized* to open or exercise control over the nightstand." 158 Or App at 507 (emphasis in original).

I disagree with the majority's holding for the reasons that follow.

Whether a third party has actual authority to consent to a search of a given area " 'necessarily involves resolution of factual issues.' " *State v. Wrenn,* 150 Or App 96, 103, 945 P2d 608 (1997) (quoting *State v. Ready,* 148 Or App 149, 153, 939 P2d 117, *rev den* 326 Or 68 (1997)). We are bound by the trial court's findings of fact where the evidence supports those findings. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). When the trial court does not make specific factual findings, and there is evidence from which such facts could be decided more than one way, we must presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion. *Id.* at 487.

Here, Stites shared the house and the bedroom with defendant. Durbin testified that Stites told him that she had obtained methamphetamine from the nightstand when it was unlocked and that defendant had given her methamphetamine out of the drawer before.

The majority wants to infer, from a lack of explicit testimony regarding defendant's state of mind, that Stites did not have joint control of defendant's nightstand. Whether or not that inference can be made, it is not one that this court is now permitted to make. Under *Ball v. Gladden,* we must presume that the trial court found the facts in a manner consistent with its ultimate conclusion, and we are bound by those facts.

Durbin's testimony permitted the trial court to infer factually that Stites had authority to get into the nightstand when it was unlocked. The nightstand was unlocked and the drawer was partially open when Durbin searched it. That is sufficient for the court legally to conclude that, when Stites consented to the search of the bedroom, she had joint control of the nightstand.

The majority's refusal to accept the trial court's reasonable factual inferences amounts to nothing more than factfinding. It is a fundamental part of our jurisprudence that we are not permitted to do that at this stage of the proceeding. Accordingly, I dissent.