Argued and submitted August 28, 1987, affirmed February 10, reconsideration denied May 6, petition for review denied June 1, 1988 (306 Or 78)

## STATE OF OREGON,
*Appellant,*

*v.*

## CHARLES LARRY BRITTEN,
*Respondent.*

(85091841, 85102044, 86030524; CA A42845)

749 P2d 1193

Rives Kistler, Assistant Attorney General, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Lawrence J. Hall, Deputy Public Defender, Salem, argued

the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The state appeals from an order suppressing evidence in three criminal cases, which have been consolidated on appeal, charging defendant with sexual abuse.[1] We affirm.

Defendant rented a cabin in a recreational vehicle park in Montana on June 5, 1984. The rent was due on the fifth of each month, and defendant usually made the payment by, or shortly after, that date. On approximately September 1, 1984, defendant told the owner/manager of the park, McComas, that he was going to be away from the cabin for about three days and that he would pay the September rent when he returned. When defendant had not returned two weeks later, McComas consulted his attorney, who told him that the cabin was abandoned and that McComas should put defendant's belongings in storage. Before McComas did that, defendant's mother called him and told him that defendant had been arrested in Oregon for nonpayment of child support. She asked McComas to pack up defendant's belongings and put them in storage until he could return for them.

McComas entered the cabin and began to pack defendant's belongings. While doing so, he noticed a ledger that contained initials, names and numbers which were not immediately capable of being deciphered. In the attic, McComas discovered a box that contained pictures, both loose and in envelopes, of naked women and girls. Some of the initials on the envelopes corresponded with those in the ledger, which, upon closer examination, appeared to be a chronicle of defendant's sexual encounters with dozens of women and girls. McComas recognized what appeared to be his sister's initials among those contained in the ledger.

McComas called the sheriff's office, and Undersheriff Geldrich came to the cabin. When Geldrich arrived, McComas showed him the ledger and box of pictures, which he had placed on a table or counter in the kitchen. After Geldrich examined them, he and McComas thoroughly searched the cabin and defendant's effects and found more pictures, some

---

[1] In the circuit court, defendant was charged with sexual abuse in the first degree; in the district court, there are two charges of sexual abuse in the second degree. The same evidentiary record on defendant's motions to suppress was used to decide the issue in all three cases.

of which showed defendant engaged in sexual acts. Geldrich thought that the pictures and ledgers might be evidence of a crime. Because some of the pictures showed defendant "coaching girls' basketball teams" in Albany, Oregon, he seized all of the material and sent it to Oregon, where defendant was incarcerated for nonsupport. Defendant was then charged with one count of sexual abuse in the first degree and two counts of sexual abuse in the second degree. The trial court suppressed all of the evidence on defendant's motion.

■     On appeal, the state argues that the trial court erred in suppressing all of the evidence, because McComas had authority to consent to a search and because McComas' intrusion was a private search. The initial question is whether Oregon or Montana law controls. Defendant's property rights in his effects are controlled by Montana law; however, the constitutional validity of the search and seizure of defendant's effects and the admissibility of the evidence seized are determined by the law of the forum, Oregon (or by federal law if it provides greater protection), even though the search occurred in Montana. *State v. Krogness*, 238 Or 135, 388 P2d 120 (1963), *cert den* 377 US 992 (1964).

■     Whether McComas had authority to consent to Geldrich's search depends on whether defendant had abandoned both the rental premises and his effects. Assuming that he had abandoned the premises, thereby terminating the lease, McComas had authority to authorize the search of the premises, but not of the effects, unless defendant had also abandoned them. There is no evidence that defendant had done so; McComas was to store them until defendant could return for them. Under Montana law there is a statutory presumption of abandonment of a former tenant's effects *if* the landlord gives written notice to the tenant that the property will be disposed of at a specified time not less than 15 days after mailing the notice if the property is not removed and if there is no response within 15 days. Mont Code Ann 70-24-430. No such notice was given here. Accordingly, defendant retained a property and privacy interest in the effects which he entrusted to McComas to store for him. *State v. Tanner*, 304 Or 312, 745 P2d 757 (1987).

    The state also contends that McComas had authority

to consent to the search, because defendant had no "reasonable expectation of privacy" in his belongings in a vacated apartment for which he owed rent. Because defendant had not abandoned his effects, he retained both his property and privacy interests in them under Article I, section 9. *State v. Tanner, supra; State v. Louis,* 296 Or 57, 672 P2d 708 (1983).

The state's argument that, because McComas had common authority over the premises, he was authorized to consent to the search of the effects, is without merit. That McComas had such authority over the premises does not translate into common authority over defendant's effects. The concept of common authority, which has been adopted under Article I, section 9, *State v. Scott,* 82 Or App 645, 650-651, 729 P2d 585 (1986), was first enunciated under the Fourth Amendment in *United States v. Matlock,* 415 US 164, 171 n 7, 94 S Ct 988, 39 L Ed 2d 242 (1974):

> "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see Chapman v. United States, 365 US 610, 5 L Ed 2d 828, 81 S Ct 776 (1961) (landlord could not validly consent to the search of a house he had rented to another), Stoner v. California, 376 US 483, 11 L Ed 2d 856, 84 S Ct 889 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*See also State v. Carsey,* 295 Or 32, 664 P2d 1085 (1983). McComas had the authority to do whatever was reasonably necessary to gather up and to store defendant's effects. It is clear that that authority did not extend to examining defendant's ledgers and photographs and did not authorize McComas to consent to Geldrich's search of defendant's effects. *See* 3 La Fave, *Search and Seizure,* § 8.5(a) (1987). Defendant retained a privacy interest in the effects that he entrusted to McComas to store. *State v. Tanner, supra.*

■     The state also argues that McComas' search of defendant's effects was a private search and, as such, was not action

by the state requiring suppression of its fruits. This is not a case where a private searcher finds contraband and turns it over to the police. Here, McComas notified the police of the suspicious evidence and Geldrich, on his arrival, participated in and extended the scope of the search and then seized the evidence. Neither is this a case in which a police officer observed an item that was immediately identifiable as evidence of a crime. *See State v. Waterbury,* 50 Or App 115, 622 P2d 330, *rev den* 290 Or 651 (1981). Rather, Geldrich had to examine defendant's effects at length and in detail in order to determine whether they were seizable as evidence of a crime. He then seized them and sent them to Oregon.

The proper analysis is set out in *State v. Waterbury, supra,* 50 Or App at 119:

> "The exclusionary rule does not apply to the results of searches and seizures by private individuals acting on their own volition. * * * However, if police participate in an otherwise private search, the officer's participation will taint the subsequent seizure and subject the fruits of the search to suppression. * * * The crucial element is 'the extent of official involvement.' * * * Thus, where the police are merely present as observers at a time when a private party makes an unauthorized search which the undercover agent does not initiate or participate in, the fruits of the search are not subject to suppression." (Citations omitted.)

Here, Geldrich was more than an observer. He participated in a search, which "occurs when a person's privacy interests are invaded." *State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986). Defendant's privacy interest in his effects is specifically protected by Article I, section 9, *State v. Tanner, supra,* and Geldrich violated that protected interest by searching through defendant's effects and then seizing them, all without a warrant or any exception to the warrant requirement. The trial court properly suppressed the evidence.

Finally, the state argues that not all of the evidence should be suppressed, because at least some of it was the product of a private search by McComas. That theory was not presented to the trial court, and the record does not permit that kind of a determination, because the state's position

below was that all of the evidence was either admissible or not.[2]

Affirmed.

---

[2] The state suggests that we should reverse and remand to the trial court to allow the record to be supplemented to permit a determination as to what portion of the evidence might be admissible. To do so would be to reverse the trial court on a theory not presented to it, which we will not do.