Argued and submitted July 20, affirmed in part, reversed in part and remanded
November 23, 1988

STATE OF OREGON,
*Appellant,*

*v.*

STEVEN GREGORY LYNCH,
*Respondent.*

(CF87-535; CA A46624)

764 P2d 957

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Peter Gartlan, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Deits and Riggs, Judges.

RIGGS, J.

## RIGGS, J.

The state appeals an order allowing defendant's motion to suppress evidence. We affirm in part, reverse in part and remand.

On January 22, 1987, Allen reported to Officer Hansen of the Oregon State Police that two pistols, some ammunition, a pullover sweater and a blue nylon duffel bag had been stolen from his home. Allen said that he believed that defendant, a recent houseguest, was involved in the theft, but he was unaware of defendant's whereabouts. Hansen was informed by another officer that defendant was at the Hermiston police station, where the officer had sent him earlier in the day to report an assault.

Defendant was summoned back to the state police office, where he related this story. He had been staying at the Allen home and had intended to leave for Portland by bus. While he was waiting at the bus depot, he was approached by Allen's wife and son. The son carried a baseball bat, and the wife told defendant that Allen suspected him of having stolen the missing items. Because defendant was afraid of being attacked, he left with a friend in the friend's car and came to the police station.

Although it was a cold winter evening, defendant was without a coat. Hansen asked him whether he had taken anything from the Allen home and whether he had anything with him. Defendant denied having taken anything from the Allens, and stated that he had nothing with him other than the clothes that he was wearing.[1]

After defendant left the police station, Hansen spoke with Allen's son, Jody. Through information provided by Jody, Hansen was able to locate defendant's friend Linda Schuman at her apartment building. Schuman told Hansen that defendant had left his coat and a blue nylon duffel bag in her car. Hansen asked to look inside the duffel bag. When Schuman hesitated, he told her that he suspected that the bag

---

[1] The state interprets this conversation as indicating that defendant had no possessions other than his clothes; defendant contends that he only meant that he had nothing else with him at the time. The trial court made no explicit finding of fact on this issue, but we presume that the trial court agreed with defendant's interpretation. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

contained two stolen weapons and that she could look in the bag herself, if she wished. Schuman looked inside the bag and reported that the guns were there. Hansen then seized the bag and its contents.

■ The trial court granted defendant's motion to suppress the evidence from the duffel bag on the ground that it was obtained in violation of his rights under Article I, section 9. Oregon's exclusionary rule is predicated on the theory that a criminal defendant has the right to be free of unreasonable searches and seizures. *State v. Tanner,* 304 Or 312, 315, 745 P2d 757 (1987). In *Tanner,* the Supreme Court held that one who entrusts effects to another "make[s] use of the privacy" of the area where the effects are stored. 304 Or at 322. Schuman had the authority to voluntarily produce the duffel bag in response to Hansen's inquiry. Defendant's privacy rights were not violated as to the officer's discovery of the duffel bag itself.[2]

■ A different problem is posed by the officer's subsequent search in the duffel bag. Although the state argues that defendant, by entrusting the duffel bag to Schuman, thereby yielded to her whatever privacy interest he had in the contents of the bag, *Tanner* does not reach so far. The bag itself was recognized by the officer as being the object of a criminal investigation. The officer could have seized the bag itself as evidence of crime and obtained a search warrant for its contents. In the absence of a warrant, the search of the bag's contents must fit within one of the recognized exceptions to the warrant requirement.[3] *State v. Smith,* 72 Or App 130, 133, 694 P2d 1013 (1985).

■ The state relies on Schuman's consent to establish the validity of the search of the duffel bag. Voluntary consent is one of the recognized exceptions to the usual rule that a warrantless search is *per se* unreasonable. *State v. Williams,* 48 Or App 293, 296, 616 P2d 1178 (1980). An effective consent to search may be given by a person other than the one whose

---

[2] The record does not reveal whether the duffel bag was in Schuman's car or in her home when Hansen arrived. It is irrelevant to the *Tanner* analysis, however, because Schuman controlled access to both areas and could admit the police to either.

[3] The state does not contend that the search in this case, which was performed by Schuman at Hansen's request, was not subject to constitutional controls. *See State v. Becich,* 13 Or App 415, 509 P2d 1232, *rev den* (1973).

activities are the subject of the search, but third-party consent is valid only if the consenting party has authority to give it. The state may justify a warrantless search by showing that permission was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *State v. Williams, supra,* 48 Or App at 297. The owner of a vehicle, for example, may consent to a search of that vehicle by police, but may not consent to a search of a passenger's effects unless those effects are in common use by the occupants of the vehicle or are jointly controlled by the passenger and the owner of the vehicle. *See State v. Williams, supra,* 48 Or App at 297. The consenting party's authority to permit the search must be actual, not just apparent. *State v. Carsey,* 295 Or 32, 44-46, 664 P2d 1085 (1983). In the present case, no evidence was presented to indicate that defendant granted Schuman any actual authority over the duffel bag.

■■   Schuman could also consent to a search of the bag if defendant had abandoned it. *State v. Britten,* 89 Or App 374, 749 P2d 1193, *rev den* 306 Or 78 (1988). The trial court apparently found that defendant did not deny owning the blue duffel bag, and we will not disturb that finding of fact. *Ball v. Gladden, supra,* n 1. The mere fact that defendant left the bag and its contents in his friend's car is not sufficient to amount to abandonment. Schuman was not authorized to consent to a search of the bag and the search was therefore unreasonable.

Evidence of the bag's contents must be suppressed as having been obtained pursuant to an illegal search.

Affirmed as to contents of bag; reversed as to bag itself and remanded.