627 A.2d 1066

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–
RESPONDENT, v. REINALDO MARISTANY, DEFENDANT–RE-
SPONDENT AND CROSS–APPELLANT.

Argued March 30, 1993—Decided July 27, 1993.

*Deborah Bartolomey*, Deputy Attorney General, argued the cause for appellant and cross-respondent (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney).

*Michele A. Adubato*, Designated Counsel, argued the cause for respondent (*Zulima V. Farber*, Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

This appeal addresses the validity of a consent search of luggage located in the trunk of a car. The critical question concerns the reasonableness of a State Trooper's reliance on the driver's consent when more than one occupant is in the car and more than one piece of luggage is searched. In addition, we consider the possible prejudice in admitting the driver's hearsay statement connecting the passenger, defendant, to a piece of luggage that contained contraband.

I

On December 17, 1988, State Troopers Frank Trifari and Thomas Colella were patrolling the southbound lane of Interstate 95 when they observed a 1988 Oldsmobile with out-of-state license plates proceeding in the left-hand lane for approximately one-half mile. The troopers stopped the car for failing to keep right, contrary to N.J.S.A. 39:4–88a. The troopers approached the car and asked the driver, Gerald Green, for his license and registration. Both Green and the passenger, defendant Reinaldo Maristany, appeared nervous as they searched for the papers. When Green failed to produce credentials, Trifari asked him to step out of the car and walk to the rear of the vehicle. Defendant remained in the passenger seat.

Trifari questioned Green and defendant separately. Green explained that he was returning from a visit with his sick aunt in New York. However, defendant claimed that he and Green had been visiting defendant's children in New York. Because of the inconsistent responses and apparent nervousness, Trifari requested Green's consent to search the car and trunk. When asked if the trunk contained any luggage, Green indicated that a blue canvas bag and brown suitcase were inside.

Defendant was not close by at the time Trifari sought Green's consent. Trifari and Green were standing at the rear of the car; defendant was sitting on the front hood. After Trifari advised Green of his right to refuse consent, Green acquiesced in the search and signed a consent-to-search form that authorized Trifari to "conduct a complete search of trunk portion of vehicle including blue canvas bag, brown suitcase, also includes interior portion of vehicle * * * ."

Defendant and Green waited at the front of the car while Trifari searched the car's interior. No contraband was found. Trifari asked defendant to sit in the front passenger seat. Green removed the keys from the ignition and opened the trunk for the trooper's inspection. In the blue canvas gym bag, Trifari found three kilograms of cocaine. The bag did not have any identifica-

tion tags and was empty except for the cocaine. A search of the brown suitcase revealed no contraband. Defendant and Green were arrested. A further search of the car uncovered a rental agreement, indicating that the car had been rented to a Bernadette Harvey.

Two hours later, at headquarters, Green gave a statement to the investigating officer claiming that he had picked up defendant in New York and that defendant had placed the blue gym bag in the trunk. In addition, Green denied any knowledge of the bag's contents. Defendant made no statement with respect to the bag's ownership.

Defendant and Green were indicted for possession of a controlled dangerous substance, contrary to *N.J.S.A.* 2C:35–10a(1), and possession of a controlled dangerous substance with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and –5b(1). Defendant moved to suppress the evidence, arguing that Green's consent was not valid with respect to the blue gym bag.

At the suppression hearing, relying on Green's statement at headquarters, defense counsel argued that Green did not own the blue gym bag, and therefore his consent to search was invalid. Defendant did not testify or present any evidence suggesting actual ownership of the gym bag. The State urged the court to consider the trooper's state of mind at the time of the search. According to the State, nothing had indicated that defendant owned the gym bag, and the trooper had been presented with a driver who showed apparent ownership and control of the car and who consented to its search. The State argued that under those circumstances the search had been valid and Green's subsequent attempt to disclaim ownership could not invalidate the consent.

The trial court denied the motion to suppress. Because Green's statement concerning the alleged ownership of the blue gym bag was not made until two hours after the search had been completed, the court concluded that the trooper's belief at the time of the stop that Green had the authority to consent had been objectively reasonable.

At trial, the defense presented no witnesses. Over defense counsel's objections, Trifari was allowed to testify regarding Green's statement that the blue gym bag belonged to defendant and that Green had no knowledge of its contents. The trial court informed the jury that "[n]ormally hearsay is not elicited. I allowed Mr. Green's statement in not for the matter of the truth stated but for the fact that he did say it."

Defendant was convicted on both counts and was sentenced to seven-years imprisonment with a three-year period of parole ineligibility. In an unreported opinion, the Appellate Division reversed, holding that Green's consent was not valid with respect to the closed containers in the trunk, and observing that the trooper was required to ascertain ownership of the luggage before conducting the search. The court concluded that defendant's consent had to be obtained to search any luggage to which he could have claimed ownership. In addition, the Appellate Division found that the admission of Green's hearsay statement constituted reversible error. We granted the State's petition for certification and defendant's cross-petition, 130 *N.J.* 601, 617 *A.*2d 1222 (1992).

II

The Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * * ." *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. Those provisions impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions. *See Delaware v. Prouse,* 440 *U.S.* 648, 653–54, 99 *S.Ct.* 1391, 1396, 59 *L.Ed.*2d 660, 667 (1979). The constitutional guarantee proscribes not all searches but only those deemed unreasonable. *State v. Bruzzese,* 94 *N.J.* 210, 217, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

■ To determine the constitutionality of a search and seizure, we consider whether the conduct of the law-enforcement officer who undertook the search was objectively reasonable. *Id.* at 219, 463 *A.*2d 320. Appearances of control at the time of the search, not subsequent determinations of title or property rights, inform our assessment of the officer's conduct. *State v. Santana,* 215 *N.J.Super.* 63, 71, 521 *A.*2d 346 (App.Div.1987).

■ A warrantless search is *per se* unreasonable unless it falls within one of a few, well-defined exceptions. *Katz v. United States,* 389 *U.S.* 347, 357, 88 *S.Ct.* 507, 514, 19 *L.Ed.*2d 576, 585 (1967); *State v. Demeter,* 124 *N.J.* 374, 379–80, 590 *A.*2d 1179 (1991). One well-established exception is a search conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 *U.S.* 218, 219, 93 *S.Ct.* 2041, 2044, 36 *L.Ed.*2d 854, 858 (1973); *State v. King,* 44 *N.J.* 346, 352, 209 *A.*2d 110 (1965). To justify a search on the basis of consent, the State must prove that the consent was voluntary and that the consenting party understood his or her right to refuse consent. *State v. Johnson,* 68 *N.J.* 349, 353–54, 346 *A.*2d 66 (1975).

■ Consent may be obtained from the person whose property is to be searched, see *Schneckloth, supra,* 412 *U.S.* 218, 93 *S.Ct.* 2041, 36 *L.Ed.*2d 854, from a third party who possesses common authority over the property, see *United States v. Matlock,* 415 *U.S.* 164, 94 *S.Ct.* 988, 39 *L.Ed.*2d 242 (1974), or from a third party whom the police reasonably believe has authority to consent, see *Illinois v. Rodriguez,* 497 *U.S.* 177, 110 *S.Ct.* 2793, 111 *L.Ed.*2d 148 (1990). Although relied on by defendant, cases such as *Matlock, supra,* 415 *U.S.* 164, 94 *S.Ct.* 988, 39 *L.Ed.*2d 242, involving consent by one person to the search of another's property, are inapposite. In this appeal, the ownership of the gym bag is an issue that continues to be unresolved, defendant not having acknowledged ownership of the bag either at the time of the search, at the suppression hearing, or at trial. In addition, Green's self-serving, exculpatory statement given at headquarters

two hours after the search had been completed cannot be relied on to establish defendant's ownership.

## III

The validity of the search depends largely on whether Trooper Trifari, at the time of the search, had a reasonable basis for believing that Green had the authority to consent to a search of the blue gym bag. After reviewing the facts and circumstances known to Trooper Trifari, we are satisfied that the officer reasonably relied on Green's consent to search the car and its contents.

■ Absent evidence that the driver's control over the car is limited, a driver has the authority to consent to a complete search of the vehicle, including the trunk, glove compartment, and other areas. *See United States v. Eldridge,* 984 *F.*2d 943, 948 (8th Cir.1993); *United States v. Dunson,* 940 *F.*2d 989, 994–95 (6th Cir.1991), *cert. denied,* —— *U.S.* ——, 112 *S.Ct.* 1488, 117 *L.Ed.*2d 629 (1992); *United States v. Dunkley,* 911 *F.*2d 522, 526 (11th Cir.1990), *cert. denied,* 498 *U.S.* 1096, 111 *S.Ct.* 987, 112 *L.Ed.*2d 1071 (1991); *United States v. Morales,* 861 *F.*2d 396, 399 (3d Cir.1988); *United States v. Varona–Algos,* 819 *F.*2d 81, 83 (5th Cir.), *cert. denied,* 484 *U.S.* 929, 108 *S.Ct.* 296, 98 *L.Ed.*2d 255 (1987). In that connection, some federal courts have expressed the view that a driver's apparent authority to consent to a search of the vehicle includes the authority to permit a search of luggage belonging to other passengers. *Dunson, supra,* 940 *F.*2d at 994–95; *United States v. Anderson,* 859 *F.*2d 1171, 1176–77 (3d Cir. 1988); *Varona–Algos, supra,* 819 *F.*2d at 83.

Other courts, however, have determined that a driver's authority to consent to a general search of a car does not necessarily include the authority to consent to a search of every container found within the vehicle. *United States v. Padron,* 657 *F.Supp.* 840, 847 (D.Del.1987), *aff'd sub nom. United States v. Rubio,* 857 *F.*2d 1466 (3d Cir.), *cert. denied,* 488 *U.S.* 974, 109 *S.Ct.* 512, 102 *L.Ed.*2d 547 (1988); *Ledda v. State,* 564 *A.*2d 1125, 1129 (Del. 1989); *State v. Lynch,* 94 *Or.App.* 168, 764 *P.*2d 957, 959 (1988).

For example, a driver's consent to search a car does not extend to containers in which the driver has disclaimed ownership because the officer is under " 'no misapprehension as to the. limit of [the driver's] authority to consent.'" *State v. Lee*, 245 *N.J.Super.* 441, 447, 586 *A.2d* 256 (App.Div.1991) (quoting *People v. Egan*, 250 *Cal.App.*2d 433, 58 *Cal.Rptr.* 627 (Ct.App.1967)). In addition, a driver may not consent to a search of another's private property contained within the car. *Santana, supra,* 215 *N.J.Super.* at 69, 521 *A.2d* 346.

As the driver, Green had immediate possession of and control over the vehicle. By possessing the keys to the car and trunk, Green displayed sufficient control over all areas of the vehicle to enable him to consent to its search. *See Morales, supra,* 861 *F.*2d at 399 n. 7; *cf. State v. Miller,* 159 *N.J.Super.* 552, 558, 388 *A.2d* 993 (App.Div.1978) (holding that consenting party's possession of keys to apartment and statement that she lived in apartment supported belief that she could authorize search of apartment, rendering consent valid). Green exercised that control when he consented to a search of the car and voluntarily opened the trunk for the trooper's inspection. In addition, Green's knowledge of the contents of the trunk, prior to the search, further supported the belief that Green had apparent authority to consent.

Once the trunk had been opened, there was nothing to alert Trooper Trifari that both, none, or only one of the bags belonged to Green. Neither bag contained identification. Further, the type of luggage, a canvas gym bag and a suitcase, did not compel the conclusion that one bag belonged to each of the occupants. If, at the time of the search, Green had denied ownership of the gym bag, see *Lee, supra,* 245 *N.J.Super.* at 448, 586 *A.2d* 256, or defendant had claimed ownership of the bag, see *State v. Hoyer,* 133 *N.J.* 315, 627 *A.2d* 1074 (1993), we might conclude that the officer's reliance on Green's consent was unreasonable. However, under these circumstances, for Trooper Trifari to believe that Green had apparent authority to consent to the search of both the gym bag and the brown suitcase was objectively reasonable.

We note the obvious interrelationship between our application of the doctrine of constructive possession, see *State v. Schmidt,* 110 *N.J.* 258, 270–76, 540 *A.*2d 1256 (1988), and the question of Green's apparent authority to consent to the search. Had a controlled dangerous substance been found in the gym bag pursuant to a search authorized by warrant, Green's status as driver would undoubtedly have been sufficient basis on which to sustain a jury's determination that Green had constructively possessed the drugs, absent any proof that the bag belonged to defendant. *Cf. State v. Palacio,* 111 *N.J.* 543, 554, 545 *A.*2d 764 (1988) (holding that evidence supported jury's determination that passenger was in constructive possession of large and valuable quantity of cocaine concealed within car). If Green's status as driver would constitute adequate basis to sustain a conviction for possession, that status would also be sufficient to support Trooper Trifari's conclusion that Green had possessed apparent authority to consent to the search of the bags.

We acknowledge the wisdom of the Appellate Division's observation that the better law-enforcement practice would be for police officers specifically to inquire and attempt to ascertain ownership of luggage in a vehicle with several occupants, rather than rely on the driver's consent to search. However, validity of the search does not depend on whether the trooper used the best procedure, but rather on whether the officer's conduct was objectively reasonable under the circumstances.

## IV

Finally, we consider whether the trial court committed reversible error in admitting Trooper Trifari's testimony concerning Green's statement that the gym bag belonged to defendant. The testimony in question occurred during the State's redirect examination of Trifari. Over defense counsel's objection, Trifari testified:

> Mr. Green stated that he picked up Mr. Maristany in New York City and that Mr. Maristany had placed a blue bag in the trunk of the vehicle and that he did not know what was in it.

Q: Was that the blue bag which you found the cocaine in?
A: Yes.

The Appellate Division concluded that the testimony was "rank hearsay," and "so prejudicial as to require reversal." We agree.

A statement made other than by a witness while testifying, offered to prove the truth of the content of the statement, is inadmissible hearsay unless it falls within one of the exceptions provided in *Evidence Rules* 63(1) through 63(33). *State v. Phelps,* 96 *N.J.* 500, 508, 476 *A.*2d 1199 (1984); *Evid. R.* 63. When a statement is admitted for a purpose other than to prove the truth of the matter asserted, the court should instruct the jury concerning the limited use of that evidence. *See State v. Marshall,* 123 *N.J.* 1, 132–33, 586 *A.*2d 85 (1991); R. Biunno, *Current New Jersey Rules of Evidence,* comment 3 on *Evid. R.* 63 (1992).

The State contends that the trooper's testimony did not constitute hearsay because it was not offered to prove the truth of the statements attributed to defendant. In addition, the State asserts that the admission of the statement was not prejudicial because it contradicted the prosecution's theory that defendant and Green together were engaged in a drug transaction.

We find the State's position unpersuasive. The purpose for which the State introduced the testimony is irrelevant in view of the absence of an instruction precluding the jury from considering the testimony as proof that the statement was true. Without a sufficient limiting instruction, the testimony contained obvious hearsay consisting essentially of Green's assertion that the gym bag containing the cocaine belonged to defendant. That statement possesses all the invidious attributes of hearsay. Made after the cocaine had been discovered, Green's self-serving, exculpatory statement clearly lacks reliability. Further, the statement serves to incriminate defendant without affording him the opportunity to cross-examine Green.

On the assumption that the testimony could have been introduced for a limited purpose, an instruction clarifying for the jury the permissible and impermissible uses of the evidence would have

been necessary. *Cf. State v. Cofield*, 127 *N.J.* 328, 341–42, 605 A.2d 230 (1992) (discussing necessity of adequate limiting instruction in context of other-crimes evidence). However, on the record before us we are unable to determine for what purpose the testimony could have been offered other than to establish defendant's possessory interest in the blue gym bag. Therefore, we conclude that the admission of Green's out-of-court statement violated *Evidence Rule* 63 and defendant's fundamental right to confront witnesses.

V

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded for retrial. In view of our disposition, we need not address the issues raised in defendant's cross-petition for certification.

POLLOCK, J., concurring in part and dissenting in part.

I concur with the majority opinion except for Part III. The problem with Part III is that it puts a premium on ignorance. Under III, as long as police officers do not know whose property they are searching, they can search at will. Consequently, I respectfully dissent from Part III.

The opinion creates the wrong incentive. As one leading authority writes, "sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'" Wayne R. LaFave, *Search and Seizure* § 8.3(g) at 267 (2d ed. 1987); *see also United States v. Gonzalez Athehorta*, 729 *F.Supp.* 248, 257 (E.D.N.Y.1990) (finding New York State Police investigator "opted to remain ignorant" rather than ask questions to find out status of woman encountered in apartment to determine if she could consent to warrantless search). This is such a case.

In the companion case, *State v. Hoyer*, "the preferred procedure for law-enforcement officers seeking consent to search one of several pieces of luggage in a car with more than one occupant is

for the officers to determine which occupant owns each item of luggage, so that the officers' reliance on consent to search may be justifiable." 133 *N.J.* 315, 322, 627 *A.*2d 1074, 1077 (1993). Having recognized the correct procedure in *Hoyer,* the majority, however, removes the incentive for law-enforcement officers to follow it in the present case.

The majority states correctly that the validity of the search depends on whether Trooper Trifari had a reasonable basis for believing that Green had the authority to consent to the search of the blue gym bag. *Ante* at 306, 627 *A.*2d at 1069. Specifically, the fact-sensitive determination accompanying an application of the apparent authority rule shall " 'be judged against an objective standard: would the facts available to the officer at the moment * * * "warrant a [person] of reasonable caution in the belief" ' that the consenting party had authority [to consent to a search of luggage in the trunk of a car]?" *Illinois v. Rodriguez,* 497 *U.S.* 177, 188, 110 *S.Ct.* 2793, 2801, 111 *L.Ed.*2d 148, 161 (1990) (quoting *Terry v. Ohio,* 392 *U.S.* 1, 21–22, 88 *S.Ct.* 1868, 1880, 20 *L.Ed.*2d 889, 906 (1968)). The facts known to Trooper Trifari would have left a reasonable person in doubt about Green's authority to consent to search both bags. *Ibid.*

Before the search, Trooper Trifari found documents in the glove compartment, showing that Maristany and Green were driving a car rented by one Bernadette Harvey, who was not present in the car. Thus, the officers knew, or should have known, that Green was not the owner and that Green's authority to consent to search the car's contents was "questionable." *United States v. Padron,* 657 *F.Supp.* 840, 847 (D.Del.1987), *aff'd sub nom. United States v. Rubio,* 857 *F.*2d 1466 (3d Cir.), *cert. denied,* 488 *U.S.* 974, 109 *S.Ct.* 512, 102 *L.Ed.*2d 547 (1988).

Shortly after the stop, Trooper Trifari ordered Green to walk to the rear of the car. He asked Green where he and Maristany had started their trip. Trooper Trifari left Green at the rear of the car with Trooper Colella and approached Maristany, who was still sitting in the passenger seat. Trifari ordered Maristany to sit on the hood of the car, facing forward, under Colella's observation.

Returning to the rear of the car, Trifari asked Green to consent to a search of the car.

Significantly, Maristany was too far away to hear this exchange. As Trooper Colella testified, "Trooper Trifari then went to the back of the car and got a consent to search form out and that took place, you know, they had a conversation. How that went about, I really don't know, because I was up front [with Maristany] * * *." Nothing indicates that Maristany was in any better position than Colella to comprehend that Green had consented to the search. Trooper Trifari could not have believed that Maristany, by remaining quietly seated on the hood of the car facing forward under the watchful eye of Trooper Colella, had impliedly consented to the search of the bags.

Hence, the majority's emphasis on Maristany's failure to claim the locker bag "either at the time of the search, at the suppression hearing, or at trial," *ante* at 305, 627 *A.*2d at 1069, is misplaced. First, Maristany, who was separated from Green and could not hear or see what was occurring at the trunk, did not have an opportunity to claim ownership of the locker bag. Second, Maristany's failure to claim ownership at the suppression hearing or at trial is irrelevant. As the majority recognizes, *ante* at 305, 627 *A.*2d at 1068, the apparent-authority rule requires consideration of the reasonableness of Trifari's belief that Green had authority to consent at the time when search was made. See *Rodriguez, supra,* 497 *U.S.* at 188, 110 *S.Ct.* at 2801, 111 *L.Ed.*2d at 161. Maristany's subsequent refusal to claim the bag is irrelevant to the determination of the validity of the consent allegedly made at the time of the search.

Before opening the trunk, Trooper Trifari asked Green if any luggage was in the trunk. Green responded that the trunk contained a brown suitcase and a blue canvas bag. The notion that each traveler would have a piece of luggage is not surprising. Trooper Trifari should not have concluded, without having solicited contrary information, that one man owned both bags and the other owned neither bag. *See, e.g., United States v. Poole,* 307 *F.Supp.* 1185, 1190 (E.D.La.1969) (stating that fact guest was

present at late hour and bag searched was overnight bag should have suggested to reasonable mind possibility that bag belonged to guest rather than consenting tenant). Indeed, as the majority states, "there was nothing to alert Trooper Trifari that both, none, or only one of the bags belonged to Green." *Ante* at 307, 627 *A*.2d at 1070. The situation was ambiguous. It called for further inquiry.

Trooper Trifari did not have to hurry because of fear for his safety. Prudently, he had called for back-up assistance. He "had ample opportunity to engage in further questioning without endangering [himself and Trooper Colella] or their investigation." *Padron, supra,* 657 *F.Supp.* at 847. He should have followed his question to Green about the contents of the trunk with the next logical question: Who owns the bags?

In *Ledda v. State,* 564 *A*.2d 1125 (Del.1989), a Delaware State Trooper obtained the consent of a driver of a car to search the vehicle. The driver signed the consent form while seated in the trooper's cruiser, while the owner remained in the stopped car. The trooper did not request the owner's consent to search the car, and the owner did not object to it. *Id.* at 1127. The trooper ultimately searched the trunk and its contents. Before that search, however, the trooper did not establish "ownership of the contents of the suitcases" in the trunk. *Ibid.* The Delaware Supreme Court validated the search of the car, concluding that the driver had the authority to consent to that search in the absence of an objection by the car's owner. In validating the search of the suitcases, the Court relied on the evidence of probable cause that arose from the discovery of a machete on top of the suitcases and of marijuana in the glove compartment. Although the Court validated that search, it found that the driver "lacked the possession and control of his passengers' suitcases that would have given him the authority to consent to a search of them." *Id.* at 1129. In brief, the apparent-authority rule did not justify the search of the suitcases. See *United States v. Block,* 590 *F*.2d 535, 541 (4th Cir.1978) (stating that the law's "enclosed spaces," including suitcases, are frequently objects of one's highest privacy expectations,

and these expectations are heightened when effects such as suitcases are temporarily deposited in public places or placed under control of another).

If I thought that requiring an inquiry about ownership of luggage would expose an officer to personal harm, I would rethink my position. And I would not "engage in [ ] metaphysical subtleties in judging the efficacy of" a consent to search a car. See *Frazier v. Cupp,* 394 *U.S.* 731, 740, 89 *S.Ct.* 1420, 1425, 22 *L.Ed.*2d 684, 694 (1969) (rejecting defendant's argument that because consenter had permission to use only one compartment in bag, he did not have authority to consent to search of entire bag). Here, however, the police could have asked Maristany if he owned the bag without exposing themselves to danger and without delaying their investigation. True, they would have had to ask one more question, but that is a small price to pay for honoring the Constitution.

The majority's approach will likely "encourage * * * police [officers] to avoid inquiring into the facts of * * * [similar future] situation[s]." *Riley v. Gray,* 674 *F.*2d 522, 529 (6th Cir.1982). The State's burden of proof "cannot be met if [police officers], faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the [officers] do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject [at least] to 'mutual use' by the person giving consent," then the search is unconstitutional. *United States v. Whitfield,* 939 *F.*2d 1071, 1075 (D.C.Cir.1991). As a practical matter, the requirement to make further inquiries in an ambiguous situation can be easily met. As a matter of law, the inquiry is constitutionally compelled.

Justice CLIFFORD joins in this opinion.

*For affirmance in part; reversal in part; and remandment*— Chief Justice WILENTZ and Justices STEIN, HANDLER, O'HERN, and GARIBALDI—5.

*Concurring and dissenting*—Justices POLLOCK and CLIFFORD—2.