Argued and submitted June 29, 1994, reversed and remanded April 26, 1995

**STATE OF OREGON,**
*Appellant,*

*v.*

**AARON SCOTT LAMBERT,**
also known as Scott Lambert,
*Respondent.*

(C 92-12-37163; CA A79534)

894 P2d 1189

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Diane L. Alessi, Deputy Public Defender, argued the cause for respondent. On the brief were Sally L. Avera, Public Defender, and David K. Allen, Deputy Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

The state appeals the trial court's order suppressing evidence seized from an apartment that was searched with the consent of one of its occupants. The trial court held that the occupant did not have the authority to consent. We disagree and reverse.

In response to information about illegal drug activity at apartment number 114 of a northwest Portland apartment complex, officer Uehara and two other Portland police officers arrived at that apartment and knocked on the door. A woman who identified herself as Jessica Babcock answered the door. Uehara asked Babcock if she lived there, and Babcock said that she did. Uehara asked if Babcock would talk to them in the hall, and Babcock said that she would. Uehara explained to Babcock that he and the other officers had been informed that illegal drug activities were occurring at the apartment, and asked if the officers could enter the apartment and look around. Babcock replied that the officers could do that.

The officers entered the apartment, and Uehara asked Babcock if he could look at her belongings. Babcock agreed and retrieved her belongings from her room. As Uehara searched Babcock's belongings, one of the other officers observed defendant standing partly behind the door to an adjacent room. The officer asked defendant what he was doing behind the door, and defendant replied that he was not hiding from anything. The officer asked defendant if he could come out from behind the door, and defendant did so. Uehara then asked Babcock if defendant lived in the room from which he had just emerged, and Babcock replied that he did. At that point, defendant went back into his room. As he did, Uehara shined his flashlight into the doorway and saw next to a bed a spoon that contained white powder and hypodermic needles with caps. Uehara immediately entered the room, arrested defendant and seized the spoon of white powder, the hypodermic needles and caps, as well as other items. Uehara read defendant his *Miranda* warnings and then asked defendant if he lived at the apartment. Defendant replied that he did not live at the apartment and was only a visitor.

Defendant was charged with unlawful possession of a controlled substance. He moved to suppress any evidence

obtained from the search, because the police did not obtain valid consent to search the premises. Defendant argued that, according to the rental agreement for the apartment, the lawful tenant of the apartment was Kent Johnson, and the agreement allowed no other persons to occupy the apartment. On the basis of the agreement, defendant concluded that Babcock could not lawfully consent to the search of the premises, because she was not lawfully there in the first place. The trial court agreed and granted defendant's motion.

On appeal, the state argues that the trial court erred in suppressing the evidence seized from the apartment. According to the state, the proper test of the validity of Babcock's consent is whether she possessed ''common authority'' over the apartment, as evidenced by her joint access to or control of the premises. Whether Babcock violated the terms of a rental agreement in obtaining joint access or control of the premises, the state argues, simply is irrelevant. Defendant disagrees, insisting that only a person with actual, legal authority to be on the premises may consent to a search of a residence. According to defendant, the rental agreement shows that the tenant, Johnson, had such authority, and there is no evidence that he had delegated that authority to Babcock.

■　　　We review the trial court's findings of historical fact for evidence in the record. *State v. Stevens*, 311 Or 119, 126-27, 806 P2d 92 (1991). We then determine whether the trial court correctly applied legal principles to those findings of historical fact. *Id.*; *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In this case, neither party takes issue with the trial court's findings of historical fact; the challenge is directed at the legal conclusions it draws from those facts.

■　　　Consent is one of the recognized exceptions to the general rule that, under both the Fourth Amendment and Article I, section 9, of the Oregon Constitution, a warrantless search is *per se* unreasonable. *State v. Lynch*, 94 Or App 168, 171, 764 P2d 957 (1988). Consent may be given by the person whose activities or belongings are the subject of the search or, in some cases, by a third party. *Id.* at 171-72. The Oregon Supreme Court described the test for determining whether a third party has validly given consent under the Fourth Amendment in *State v. Carsey*, 295 Or 32, 664 P2d 1085

(1983). Adopting the reasoning of the United States Supreme Court in *United States v. Matlock*, 415 US 164, 171 n 7, 94 S Ct 988, 39 L Ed 2d 242 (1974), the court held that valid third-party consent must be given by a person who has "common authority," as evidenced by that person's "joint use or occupancy of the premises." *Carsey*, 295 Or at 44-45.

■    It bears emphasis that the court said in *Carsey* that its test turns on the third party's relationship to the *premises*, not to other occupants. The court, in fact, rejected what it characterized as "agency analyses," which would require that the third party receive authority to consent by virtue of permission from the lawful owner or occupier of the premises. Quoting *Matlock* on that point, the court said:

> " 'Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * *but rests rather on mutual use of the property by persons generally having joint access or control for most purposes*, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' "

*Id.* at 39. (Citations omitted; emphasis supplied by Oregon Supreme Court.) In *Lynch*, we expressly adopted the same test for determining the validity of consent under the Oregon Constitution. *Lynch*, 94 Or App at 171-72. The issue, then, is whether Babcock had authority to consent to the search by virtue of her use of, access to and control of the premises.

The court found, and no one disputes that, when the officers knocked at the apartment door, it was Babcock who answered; that Babcock told the police that she lived at the apartment; that Babcock said that she kept her belongings in the apartment and, in fact, brought them to the officers to be searched; that she knew the layout of the apartment; and that she told the officers who else lived there. That evidence is sufficient to establish Babcock's use of the apartment and her joint access to or control of it for most purposes.

The sole evidence introduced to controvert Babcock's authority to consent was the rental agreement, which

provides that only Johnson, the renter named in the agreement, could occupy the premises. That agreement, however, demonstrates nothing about whether Babcock had joint access to or control of the apartment for most purposes. At best, it demonstrates that Babcock may have been subject to eviction by the landlord. But the evidence remains uncontradicted that she did, in fact, have joint access to and control of the premises for most purposes, and, under *Carsey*, that is the focus of our inquiry.

■      Defendant insists that mere evidence that Babcock had access to and control of the apartment for most purposes is insufficient. According to defendant, there must be evidence "that she was lawfully in the residence, with Johnson's permission, or that Johnson had granted her control over the premises." Defendant, however, relies on precisely the sort of agency analysis that the Oregon Supreme Court rejected in *Carsey*. *Carsey*, 295 Or at 39. For the purposes of determining the validity of Babcock's consent to search the apartment, we look to the evidence of her use of, access to and control of the premises, not to her relationship with the actual owner or lessee. *Id.*

The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.